

1  CHRIS R. OTTENWELLER (STATE BAR NO. 73649)
   cottenweller@orrick.com
2  BAS DE BLANK (STATE BAR NO. 191487)
   basdeblank@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, California  94025
   Telephone:    +1-650-614-7400
5  Facsimile:    +1-650-614-7401

6  Attorneys for Applicant
   APPLE INC.
7

**ORIGINAL** Paid

**Filed**

MAY 2 5 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN JOSE DIVISION

11

12  *In re* Ex Parte Application of

13  APPLE INC.

14                Applicant,

15  For an Order Pursuant to 28 U.S.C. § 1782
    Granting Leave to Obtain Discovery from Quinn
16  Emanuel for Use in Foreign Proceedings
17

CV 12 80124 LHK MISC.

Case No.

**EX PARTE APPLICATION FOR
AN ORDER PURSUANT TO 28
U.S.C. § 1782 GRANTING LEAVE
TO OBTAIN DISCOVERY FROM
QUINN EMANUEL FOR USE IN
FOREIGN PROCEEDINGS**

18
19
20
21
22
23
24
25
26
27
28

1



1    Apple Inc. ("Apple") hereby applies to the Court for an order pursuant to 28 U.S.C. §1782

2 granting Apple leave to obtain targeted, non-privileged discovery from Quinn Emanuel Urquhart

3 & Sullivan, LLP ("Quinn Emanuel") for use in foreign litigations.  This application is supported

4 by the memorandum of points and authorities below and the declarations of Matthias Koch, Sang-

5 Wook Han, and Gonzalo Ulloa, filed concurrently herewith.  The proposed order and subpoena

6 are attached to this application as Exhibits A and B, respectively.

7    **I.    INTRODUCTION**

8    Apple has filed lawsuits against Samsung and its affiliates in several jurisdictions around

9 the world, including in Germany and Korea where it alleges that Samsung's phones and tablets

10 infringe Apple's utility patents and registered designs and that Samsung's actions constitute

11 unfair competition.  Apple has also filed a counterclaim against Samsung in Spain, alleging

12 infringement of registered designs and unfair competition in the sale of tablet computers.  Under

13 28 U.S.C. §1782 interested parties, such as Apple, may obtain discovery for use in foreign

14 litigations from persons located within the United States.

15    In support of its claims in litigation in Germany, Korea and Spain, Apple seeks limited

16 discovery from Quinn Emanuel, counsel for Samsung Electronics Co., Ltd. in litigation currently

17 pending in this District ("the California case")[1] and before the United States International Trade

18 Commission (the "ITC cases").[2]  Quinn Emanuel is in possession of non-privileged documents

19 produced by Samsung in these cases.  Specifically, Apple seeks documents, already collected

20 from Samsung and in Quinn Emanuel's possession, showing Apple designs and features were

21

22 _____
[1]    *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-1846-LHK.  Apple filed its initial
23 Complaint against Samsung in this District alleging that Samsung's products infringe a number of
Apple's utility patents, design patents, trademarks and trade dress related to the iPhone and iPad,
24 and that Samsung's actions constitute unfair competition and false designation of origin. *See*,
Amended Complaint at p. 7-24 (June 16, 2011).
25 [2]    There are two pending ITC investigations.  In *Certain Electronic Digital Media Devices
and Components Thereof*, Inv. No. 337-TA-796, the ITC is investigating Apple's allegation that
26 Samsung infringes certain of Apple's utility and design patents related to the iPhone and iPad.  In
*Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and
27 Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, the ITC is investigating
Samsung's allegation that Apple infringes certain Samsung utility patents.

28

1   important to consumers, Samsung's designers were considering Apple's products, and Samsung
2   intellectual property is subject to licensing on fair, reasonable, and non-discriminatory terms.

3       Apple's application satisfies the requirements of section 1782. First, this is the district "in
4   which [the] person resides or is found," 28 U.S.C. §1782(a), because Quinn Emanuel has offices
5   at 50 California Street, San Francisco, California and 555 Twin Dolphin Dr., Redwood Shores,
6   California. Second, Apple seeks the discovery for use "in a proceeding in a foreign or
7   international tribunal," *id.*, specifically the Düsseldorf Regional Court, the Seoul Central District
8   Court, and the Community Designs Court in Alicante, Spain. Third, Apple qualifies as "an
9   interested person" in those foreign proceedings, as it is plaintiff or counter-claimant.

10      In addition, the factors the Supreme Court identified to guide courts' discretion in
11  analyzing applications under section 1782 all favor Apple's request. Quinn Emanuel is not a
12  participant in the foreign proceedings. The foreign courts in which Apple is litigating are
13  receptive to U.S. federal court judicial assistance. The application is not made as an attempt to
14  circumvent the discovery procedures of any foreign jurisdiction. Finally, the request is limited
15  and not unduly burdensome.

16      Therefore, Apple respectfully requests the Court enter the order attached as Exhibit A
17  allowing Apple to serve the subpoena attached as Exhibit B.

18  ## II.    FACTUAL BACKGROUND

19      Apple and Samsung are engaged in litigation around the world. With this application,
20  Apple seeks discovery for use in cases in Düsseldorf, Germany, Seoul, South Korea, and
21  Alicante, Spain. The documents Apple seeks – showing that Apple designs and features were
22  important to consumers and that Samsung's designers were considering Apple's products – are
23  probative evidence in each jurisdiction where Apple has alleged unfair competition.

24      Apple filed a complaint in the Seoul Central District Court on June 22, 2011, Case No.
25  2011 Gahap 63647, alleging unfair competition as well as infringement of several of Apple's
26  utility and design patents. Han Decl. ¶ 2. Korean law prohibits creating confusion among
27  consumers by using a source identifier (such as a trademark or product packaging) that is similar
28  or identical to another's well-known source identifier. *Id.*, ¶¶ 5-9. Evidence that the defendant

1  understood Apple's designs and features to be important to consumers and that defendant's

2  designers were considering Apple's products when creating its own is evidence that tends to

3  establish unfair competition. *Id.*, ¶¶ 10-12.

4       Apple filed two complaints in the Düsseldorf Regional Court on November 25, 2011.

5  Case No. 14c O 293/11 alleges unfair competition and infringement of Registered Community

6  Designs for the iPad. Koch Decl., ¶ 4. Case No. 14c O 294/11 alleges unfair competition and

7  infringement of Registered Community Designs for the iPhone 3G and iPhone 4. *Id.* Under

8  German law, the legal test for a claim based on unfair competition asks whether the plaintiff's

9  product has acquired "individual character" and whether the defendant's actions constitute

10  "unreasonable exploitation of esteem." *Id.,* ¶ 5. Evidence the defendant understood the appeal to

11  consumers of the design and features of plaintiff's products and that the defendant considered

12  Apple's products when creating its own is suitable to show the extent to which similar features of

13  the defendant's product were influenced by the plaintiff's product in order to take advantage of

14  the plaintiff's product's reputation. *Id.,* ¶ 6.

15       In response to an action Samsung filed in the Community Designs Court in Alicante,

16  Spain seeking a declaration of non-infringement of Apple's Registered Community Design for an

17  early tablet computer, Apple filed a counterclaim alleging unfair competition and infringement of

18  several Registered Community Designs. *See* Case No. 755/2011-C, Apple's Reply and

19  Counterclaim filed February 27, 2012; Ulloa Decl., ¶ 4. To show unfair competition in Spain, a

20  plaintiff must show either (i) imitation and competitive merit and likelihood of consumer

21  confusion (ii) or imitation and competitive merit and undue exploitation of the claimant's

22  reputation, or (iii) acts of interference that, without any objective justification, negatively affect

23  the competitive position of Apple's iPad. Ulloa Decl., ¶ 6. Evidence the defendant understood

24  Apple's designs and features to be important to consumers and that defendant's designers were

25  considering Apple's products is persuasive evidence of imitation. *Id.,* ¶¶ 7-8.

26

27

28

Apple's Ex Pare Application For Order Granting 28
U.S.C. § 1782 Discovery

## III.   ARGUMENT

### A.   Legal Standard

The purpose of section 1782 is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 (2004). Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). The statute thus sets forth three requirements, authorizing the district court "to grant a Section 1782 application 'where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or 'any interested person.''" *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) (internal quotations omitted).

In *Intel*, the Supreme Court identified several non-exhaustive factors to guide district courts in exercising their discretion to grant section 1782 applications. The Court said the factors the court should consider include (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; (4) and whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

This application meets the statutory requirements of section 1782, and the discretionary factors strongly favor granting the requested discovery.

**B.     Apple's Application Meets The Section 1782 Requirements**

Apple's application meets each of the three statutory requirements.  First, Quinn Emanuel is a person who resides in the district. The offices of Samsung's lead counsel in the California and ITC cases are in San Francisco and Redwood Shores, California.  Whether the documents are in Quinn Emanuel's custody only temporarily, for the purposes of the California litigation, is not relevant to the statutory requirement. *See In re Application of Schmitz*, 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003) *aff'd sub nom. Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79 (2d Cir. 2004) (concluding that a section 1782 application for documents in the possession of Cravath, Swaine & Moore met the statutory requirements and application of section 1782 "does not involve an analysis of the duration of residency of the documents or even why a respondent has the documents").

Second, the discovery is sought for use in a proceeding before a foreign tribunal. Specifically, Apple seeks information related to its unfair competition in three foreign tribunals: the Düsseldorf Regional Court, the Seoul Central District Court, and the Community Designs Court in Alicante, Spain.

Third, Apple qualifies as an "interested party." "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke section 1782." *Intel*, 542 U.S. at 256.

Accordingly, Apple's petition satisfies the statutory requirements for an application under section 1782.

**C.     The Supreme Court's *Intel* Factors Strongly Favor Granting Apple's Application**

In addition, the factors identified by the Supreme Court in *Intel* weigh in favor of the Court exercising its discretion to grant the application.

**1.     Quinn Emanuel Is Not A Participant In The Foreign Proceedings**

The first *Intel* factor to guide courts' discretion is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Quinn

1    Emanuel is not a participant in the litigation in Germany, Korea or Spain.  Of the foreign cases at

2    issue in this application, Quinn Emanuel is counsel to a participant only in the German cases.  It

3    represents the named defendants Samsung Electronic Co., Ltd, and Samsung Electronics GmbH.[3]

4    Courts have found that counsel to participants in the underlying foreign proceedings are not

5    "participants" themselves for the purposes of a section 1782 application. *See In re Microsoft*

6    *Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (finding that Cleary Gottlieb, counsel to the

7    defendants in the underlying proceedings, was not a participant *per se* in those proceedings).  In

8    any event, courts frequently grant section 1782 discovery even from parties to foreign cases. *See,*

9    *e.g., Heraeus Kulzer, GmbH v. Biomet, Inc.* 633 F.3d 591, 596 (7th Cir. 2011) (permitting section

10   1782 discovery from opposing party in foreign suit); *Cryolife, Inc. v. Tenaxis Medical, Inc.*, No.

11   C08-05124 HRL, 2009 WL 88348, at *1-2, 5 (N.D. Cal. Jan. 13, 2009) (granting section 1782

12   discovery from named defendant in the foreign proceeding).

### 2.    The German, Korean And Spanish Courts Are Receptive To U.S. Judicial Assistance

15       The second *Intel* factor courts should consider is "the nature of the foreign tribunal, the

16   character of the proceedings underway abroad, and the receptivity of the foreign government or

17   the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  The

18   proceedings underway abroad all involve claims that Samsung's copying of the look and design

19   of Apple's iPhone and iPad constitutes unfair competition.  Discovery showing that Samsung

20   copied Apple's products would be central to Apple's case. *Heraeus Kulzer*, 633 F.3d at 596

21   (permitting discovery, noting the "importance of American-style discovery" to the plaintiff's

22   ability to prove its case).  Moreover, this Court has previously granted applications under section

23   1782 to foreign adjudicative bodies in these jurisdictions. *See Cryolife*, 2009 WL 88348, at *1-2

24   (permitting discovery for use in patent infringement suit in Düsseldorf Regional Court); *In re*

25   *Application for Appointment of a Comm'r re Request for Judicial Assistance for the Issuance of*

---

[3]    In the Korean case, Yulchon represent the named defendant Samsung Electronics Co.  In the Spanish case, Clifford Chance represents the named defendants Samsung Electronic Co., Ltd. and Samsung Electronics Iberia S.A.U.

Apple's Ex Pare Application For Order Granting 28
                                                           U.S.C. § 1782 Discovery

1  *Subpoena Pursuant to 28 U.S.C. 1782*, No. C 11-80136 RS MEJ, 2011 WL 2747302, at *1, 4

2  (N.D. Cal. July 13, 2011) (Spain); *In re Request For Judicial Assistance From Seoul Dist.*

3  *Criminal Court, Seoul, Korea*, 428 F. Supp. 109, 111 (N.D. Cal. 1977) *aff'd, In re Request For*

4  *Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720 (9th Cir. 1977)

5  (South Korea).  Because there is no indication the foreign tribunals would be opposed to the

6  discovery Apple seeks, this factor weighs heavily in favor of Apple's application.  "Absent a clear

7  and unequivocal indication that the foreign tribunal would not be receptive to the evidence

8  sought, this Court's role is a limited one." *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010).

9
             **3.    Apple's Request Is Not An Attempt To Circumvent The**
             **Procedures Of The Foreign Courts**
10

11       The third *Intel* factor guiding the court's exercise of discretion is whether an applicant was

12  seeking in bad faith "to circumvent foreign proof-gathering restrictions or other policies of a

13  foreign country or the United States." *Intel*, 542 U.S. at 260-63, 265.  Apple is unaware of any

14  foreign discovery procedures that would prohibit obtaining the discovery it seeks through this

15  application.  Indeed, as noted above, this Court has previously granted section 1782 applications

16  involving the same foreign courts at issue in this application.  Rather than circumventing foreign

17  discovery procedures, Apple brings this application because the limited discovery necessary to

18  help Apple prove its case is discovery that is unobtainable under the rules of the foreign

19  jurisdictions.  For example, American-style discovery

20                  is unobtainable in the German legal system, which does not
                 authorize discovery in the sense of Rule 26 of the Federal Rules of
21               Civil Procedure.  A party to a German lawsuit cannot demand
                 categories of documents from his opponent.  All he can demand are
22               documents that he is able to identify specifically – individually, not
                 by category.
23

24  *Heraeus Kulzer*, 633 F.3d at 596.  Similarly, Korean and Spanish procedures do not provide for

25  the discovery Apple needs, hindering Apple's ability to prove its case. *See* Koch Decl. ¶ 7, Ulloa

26  Decl. ¶ 9 and Han Decl. ¶ 13.

27       That Apple would not be able to obtain the documents it seeks under foreign discovery

28  procedures does not bar the court from granting the application.  To the contrary, in *Intel*, the

1  Supreme Court rejected the so-called foreign discoverability rule and held that section 1782 does

2  not "categorically bar a district court from ordering production of documents where the foreign

3  tribunal or the 'interested person' would not be able to obtain the documents if they were located

4  in the foreign jurisdiction." *Intel*, 542 U.S. at 259-60. Since *Intel*, other courts have further

5  broadened the category of documents that may be discovered. In a recent decision, the Second

6  Circuit rejected a so-called admissibility rule. The court held that a district court "should not

7  consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782

8  application." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)

9  (original emphasis). Apple's application is not an end-run around foreign discovery procedures;

10  it is a good faith attempt to "take advantage of our generous discovery provisions" to prove its

11  case. *Heraeus Kulzer*, 633 F.3d at 594.

12  Nor is there any tension between Apple's request and the protective order in the California

13  case. That order restricts the use of materials the parties designate as confidential but recognizes

14  that such information may need to be produced in response to a subpoena. *See* Exh. C at 26. If

15  documents designated as confidential under the protective order in the California case are

16  produced in response to the Court's order, Samsung is free to seek protection for such

17  confidential material in the foreign jurisdictions.[4]

18  **4.  Apple's Request is Not Unduly Burdensome**

19  Finally, the Supreme Court noted that "unduly intrusive or burdensome requests may be

20  rejected or trimmed." *Intel*, 542 U.S. at 265. Here, the discovery Apple seeks is tailored to assist

21  Apple in prosecuting its unfair competition claims. Apple is requesting discovery limited to non-

22  privileged documents that show Apple designs and features were important to consumers,

23  Samsung's designers were considering Apple's products when creating their own, and Samsung

24  intellectual property is subject to licensing on fair, reasonable, and non-discriminatory terms.

---

25  [4]    In Germany, the parties may enter a confidentiality agreement that specifies who may

26  view confidential information. Koch Decl., ¶ 8. In Korea, a party may request that confidential
   documents submitted are only viewed by the court. Han Decl., ¶ 15. Indeed, Apple has made

27  such requests in a case brought by Samsung in Korea. In Spain, a party may petition the court to
   keep documents under seal, which Apple has done in the Spanish case at issue in this application.

28  Ulloa Decl., ¶¶ 10-11.

1 Because Samsung has these documents in the California case, Quinn Emanuel is already in

2 possession of them and would not have to undertake additional document collection, avoiding any

3 undue burden.

4            **5.     Granting Apple's Request Would Promote Efficient Discovery**

5        In addition to the *Intel* factors, courts have also considered whether permitting section

6 1782 discovery would accomplish the aims of the statute, which include "providing efficient

7 means of assistance to participants in international litigation in our federal courts." *Schmitz*, 376

8 F.3d at 84 (internal quotation omitted). Given the complex nature of the worldwide litigation

9 between Apple and Samsung, section 1782 provides an efficient mechanism for discovery.

10 Rather than seeking the same discovery in each separate jurisdiction, Apple can obtain the

11 discovery – already in Quinn Emanuel's possession – with one application.

12     **IV.    CONCLUSION**

13        Apple seeks limited discovery for use in currently pending cases in Germany, Korea and

14 Spain. These non-privileged documents are already in Quinn Emanuel's possession. Apple's

15 application meets the statutory requirements of section 1782. In addition, the factors the Supreme

16 Court identified in *Intel* weigh in favor of granting the application. Accordingly, Apple

17 respectfully requests this Court grant the application and issue the proposed order attached as

18 Exhibit A allowing Apple to issue the subpoena attached as Exhibit B.

19

20 Dated: May __25__, 2012

21

22                    By: *Bas de Blank*
                        Bas de Blank

23                       Attorneys for Applicant
24                       APPLE INC.

25

26 OHSUSA:750853462.2

27

28

Apple's Ex Pare Application For Order Granting 28
U.S.C. § 1782 Discovery

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12

*In re* Ex Parte Application of                    Case No. _____

13

APPLE INC.                                         **[PROPOSED] ORDER GRANTING EX**
                                                   **PARTE APPLICATION FOR AN**
14                                                 **ORDER PURSUANT TO 28 U.S.C.**
                    Applicant,                     **§ 1782 GRANTING LEAVE TO**
15                                                 **OBTAIN DISCOVERY FROM QUINN**
For an Order Pursuant to 28 U.S.C. § 1782          **EMANUEL FOR USE IN FOREIGN**
16  Granting Leave to Obtain Discovery from        **PROCEEDINGS**
    Quinn Emanuel for Use in Foreign Proceedings
17

18

19

20

21

22

23

24

25

26

27

28

The Court, having considered Apple Inc.'s ("Apple") Ex Parte Application For An Order Pursuant To 28 U.S.C. § 1782 Granting Leave To Obtain Discovery From Quinn Emanuel For Use In Foreign Proceedings, the supporting declarations and exhibits,

IT IS HEREBY ORDERED that the Application is GRANTED and Apple may serve the subpoena attached as Exhibit B to that application.

**IT IS SO ORDERED.**

Dated: _____, 2011

_____
United States District Court Judge

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

[PROPOSED] ORDER GRANTING APPLICATION FOR ORDER
TO SERVE SUBPOENA PURSUANT TO 28 U.S.C. § 1782

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| In re Application of Apple, Inc., for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Quinn Emanuel for Use in Foreign Proceedings | ) ) ) ) ) ) | Civil Action No. <br> Foreign Proceedings, as defined in Attachment A. <br> (Subpoena pursuant to 28 U.S.C. § 1782) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Quinn Emanuel Urquhart & Sullivan, LLP, 555 Twin Dolphin Dr., 5th Floor, Redwood Shores, California 94065

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place: Orrick, Herrington & Sutcliffe LLP <br> 1000 Marsh Road <br> Menlo Park. CA 94025 | Date and Time: <br><br> June 15, 2012 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: ____05/25/2012____

CLERK OF COURT

OR *Basde DL*

_____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Apple, Inc.
_____ , who issues or requests this subpoena, are:

Bas de Blank, Orrick Herrington & Sutcliffe, LLP, 1000 Marsh Road, Menlo Park, CA  94025
Tel.: (650) 614-7400; Fax: (650) 614-7401; Email: bdeblank@orrick.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. Foreign Proceedings, as defined in Attachment A.
(Subpoena pursuant to 28 U.S.C. § 1782)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Quinn Emanuel Urquhart & Sullivan, LLP

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows:

_____

_____   on *(date)* _____  ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: ___05/25/2012___                    _____
                                                                  *Server's signature*

                                                         _____
                                                                  *Printed name and title*

                                                         Professional Legal Services
                                                         28 N. First Street, #303
                                                         San Jose, CA  95113
                                                         _____
                                                                  *Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

Case 5:12-mc-80124-LHK Document 1 Filed 05/25/12 Page 17 of 60

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**
**Subpoena to Quinn Emanuel Urquhart & Sullivan, LLP**

## DEFINITIONS AND INSTRUCTIONS

(a)     "Apple" means Apple Inc., any corporate predecessor, past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

(b)     "Quinn" or "You" means Quinn Emanuel Urquhart & Sullivan, LLP, any predecessor, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.

(c)     "Samsung" means Samsung Electronics Co., Ltd., any corporate predecessor, past or present division, department, parent, subsidiary, affiliate, director, officer, principal, agent, employee, consultant, representative, or other person acting on its behalf or under its control.  In the avoidance of confusion, "Samsung" includes, but is not limited to Samsung Electronics Iberia S.A.U., Samsung Electronics GmbH, Samsung Telecommunications America, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America, Inc.

(d)     "Foreign Proceedings" mean Case No. 2011 Gahap 63647 before the Seoul Central District Court, 11th Panel (South Korea), Case No. 755/2011-C, *Samsung Electronics Co., Ltd et al. v. Apple Inc.* in the Community Designs Court in Alicante, Spain, and two cases in Düsseldorf Regional Court, *Apple Inc. v. Samsung Electronics GmbH, et al.*, No. 14c O 293/11 and No. 14c O 294/11 (Germany).

(e)     The "California Case" means *Apple Inc. v. Samsung Elecs. Co. Ltd.,* No. 11-cv-1846-LHK.

(f)     The "ITC Cases" refer to two proceedings before the United States International Trade Commission: (i) *Certain Electronic Digital Media Devices and Components Thereof,* Inv. No. 337-TA-796 and (ii) *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794.

- 1 -

(g) "Document" is used in its broadest sense and includes all documents and tangible things as those terms are described in Federal Rule of Civil Procedure 34(a)(1)(A) & (B) and also includes all writings, recordings and photographs (including originals and duplicates) as defined in Federal Rule of Evidence 1001.

(h) These requests cover all documents in the possession, custody or control of the responding party or the custody and control of its directors, officers, employees, agents, attorneys or representatives of any kind wherever those documents are located.

(i) The connectives "and" and "or" as used herein shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(j) Any word written in the singular shall be construed as plural or vice-versa when necessary to facilitate, or bring within its scope all responses that might otherwise be construed to be outside of its scope.

(k) To the extent that the documents requested herein are not produced as they are kept in the usual course of business, then as to each document produced, indicate the number or numbers of the requests below to which the document is responsive.

(l) The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any documents which otherwise may be excluded from production.

(m) If any document requested herein is withheld pursuant to any objection based upon privilege, identify each document for which the privilege is claimed and state:

1. The type of document (letter, report, memoranda, etc.), including any title or identifying number thereon;

2. Its date of origin or preparation:

3. The name of its author or originator;

4. The name of its addressee(s), if any;

5. A brief summary of its substance; and

6. A factual and legal basis upon which a privilege is claimed sufficient to permit the Court to adjudicate the validity of the claim.

(n)    If any document requested to be produced herein was in your possession, custody or control, but has since been disposed of, lost, discarded, destroyed, or otherwise has become unavailable, please identify which documents were destroyed and state further the identity of the person who ordered them destroyed and the reason for their destruction.

## REQUESTED DOCUMENTS:

1. All documents produced by or on behalf of Samsung in the California case including, but not limited to, documents originally produced in the ITC cases that have been deemed produced in the California case.

2. All documents concerning whether Samsung intellectual property is, has been, or could be described as essential to practice the Universal Mobile Telecommunications Standard ("UMTS") including, but not limited to, presentations to Samsung's executive management and Board of Directors.

3. All documents concerning whether Samsung should or must disclose any intellectual property to a standard-setting organization including, but not limited to, the European Telecommunications Standards Institute ("ETSI"), the Telecommunications Technology Association ("TTA"), the Association of Radio Industries and Businesses ("ARIB"), the Alliance for Telecommunications Industry Solutions ("ATIS"), the China Communications Standards Associations ("CCSA"), and the Telecommunication Technology Committee ("TTC").

4. All documents concerning whether Samsung intellectual property should or must be licensed on a fair, reasonable, and non-discriminatory ("FRAND") basis including, but not limited to, documents describing such terms.

5. All documents concerning Samsung's calculation of a FRAND royalty rate for intellectual property essential to practice UMTS.

6. All documents concerning positions Samsung has taken concerning FRAND and FRAND royalty rates including, but not limited to, positions Samsung has taken in other litigation.

7. All documents concerning Samsung's determination of a FRAND royalty rate for any intellectual property rights that are claimed essential to the UMTS standard or the proprietary of injunctive relief for the infringement of intellectual property rights claimed to be essential to the UMTS standard.

8. All documents concerning Samsung's analysis, review, consideration, or copying of, or comparison against, any Apple product or product feature in designing, developing, or implementing any feature of any Samsung product including, but not limited to, (1) their Exterior Design; (2) functionality that allows for an image, list, or webpage to be scrolled beyond its edge until it is partially displayed; and (3) functionality that allows for an image, list, or webpage that is scrolled beyond its edge to scroll back or bounce back into place so that it returns to fill the screen.

9. All documents concerning Samsung's discussions or decisions to redesign the Galaxy Tab 10.1 following Apple's announcement of the iPad 2 on or about March 2, 2011.

10. All documents concerning any study or analysis by Samsung of Apple's iPad or iPhone products including, but not limited to, documents concerning the design, appearance, user interface, features, functionality, circuitry, or software.

11. All documents concerning any comparison between Apple's iPad or iPhone and a Samsung product.

12. All documents concerning any instances of consumer confusion in which Samsung was made aware that a person confused an Apple produce for a Samsung product or confused a Samsung product for an Apple product.

13. All documents concerning Samsung's analysis, study, or review of Apple's iPhone or iPad products.

14. All documents concerning Samsung's understanding of consumer demand for or acceptance of the form, features, functionality, appearance, and user interface of Apple's iPhone and iPad.

15. All documents concerning Samsung's understanding of the appeal or importance to consumers of the design and features of Apple's iPhone and iPad.

16. All documents concerning efforts by Samsung to copy, duplicate, imitate, or modify any features or aspect of Apple's iPhone or iPad including, but not limited to, the design, appearance, user interface, features, functionality, circuitry, or software.

17. All documents concerning whether Samsung designers considered Apple's iPhone or iPad when designing any Samsung product including, but not limited to, documents concerning the purpose, nature and effect of such consideration.

18. All documents concerning any comparison by Samsung of a Samsung product and Apple's iPhone or iPad including, but not limited to, documents concerning any similarities or differences between such products.

19. All documents concerning the influence of Apple's iPhone and iPad on the design and functionality of Samsung products.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC., a California corporation,

        Plaintiffs,

      vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

        Defendants.


SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company, a
California corporation,

        Counterclaim-Plaintiff,

      v.

APPLE INC., a California corporation,

        Counterclaim-Defendants.

Civil Action No. 11-CV-01846-LHK

**AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND USE
OF DISCOVERY MATERIALS**

02198.51855/4543875.1

## AGREED UPON PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff and counterclaim-defendant Apple Inc. ("Apple") and defendants and counterclaim-plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") (collectively referred to herein as the "Parties") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

### 1.     PURPOSES AND LIMITATIONS

(a)     Unless otherwise agreed by the parties, Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)     The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

02198.51855/4543875.1

2.   **DEFINITIONS**

(a)   "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)   "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party, (ii) partners and associates of such counsel to whom it is reasonably necessary to disclose the information for this litigation, and their paralegals and support staff, and (iii) outside, independent attorneys contracted to provide legal advice to a Party in connection with this action.

(c)   "Patents-in-suit" means U.S. Patents Nos. 7,812,828; 6,493,002; 7,469,381; 7,844,915; 7,853,891; 7,663,607; 7,864,163; 7,920,129; D627,790; D617,334; D604,305; D593,087; D618,677; D622,270; D504,889; 6,928,604; 7,050,410; 7,069,055; 7,079,871; 7,200,792; 7,362,867; 7,386,001; 7,447,516; 7,456,893; 7,577,460; 7,675,941; and 7,698,711 and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

(d)   "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)   "Producing Party" means any Party or non-party entity that discloses or produces any Discovery Material in this case.

(f)   "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or

- 3 -

"HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order.

(g)      "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)      "Source Code" means confidential and proprietary computer code, scripts, assembly, object code, source code listings and descriptions of source code, object code listings and descriptions of object code, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any application-specific integrated circuit (ASIC) or other chip.

3.   **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

4.   **SCOPE**

(a)      The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)      Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Discovery Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Discovery Material to an individual who prepared the Discovery Material.

(c)     Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with consent of the Producing Party or by order of the Court.

(d)     This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.      **DURATION**

Even after the termination of this case, and unless otherwise indicated in this Order, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or an order from this Court otherwise directs.

6.      **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     Basic Principles. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function, except as expressly provided herein. Protected Material shall not voluntarily be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b)     Patent Prosecution Bar. Absent the written consent of the Producing Party, anyone who receives one or more items designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" shall not be involved, directly or indirectly, in any of the following activities: advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications (whether for design or utility patents), specifications, claims,

and/or responses to office actions, or otherwise affecting the disclosure in patent applications or specifications or the scope of claims in patents or patent applications relating to the subject matter of the patents-in-suit before any foreign or domestic agency, including the United States Patent and Trademark Office. These prohibitions are not intended to and shall not preclude (i) participating in or advising on any reexamination or reissue proceeding by ~~Defendants'~~ Samsung's Outside Counsel with respect to any patents in which ~~Plaintiff~~ Apple has any interest, or participating in or advising on any reexamination or reissue proceeding (except for participating in or advising on, directly or indirectly, claim drafting or amending claims) by ~~Plaintiff's~~ Apple's Outside Counsel with respect to any patents in which ~~Plaintiff~~ Apple has any interest; and (ii) participating in or advising on any reexamination or reissue proceeding by ~~Plaintiff~~ Apple's Outside Counsel with respect to any patents in which ~~Defendants have~~ Samsung has any interest, or participating in or advising on any reexamination or reissue proceeding (except for participating in or advising on, directly or indirectly, claim drafting or amending claims) by ~~Defendants'~~ Samsung's Outside Counsel with respect to any patents in which ~~Defendants~~ Samsung ~~have~~ has any interest.

    (c)    The prohibitions in Paragraph 6(b) shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

    (d)    Secure Storage. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

(e)   <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Materials themselves, the content of those Protected Materials, or the fact of those particular Protected Materials' existence except as provided in this Order.

(f)   <u>Limitations</u>.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to Order of the Court.  Notwithstanding the foregoing, a Producing Party may not disclose its own Protected Material to the extent such Protected Material is also the Protected Material of any other party (e.g., settlement discussions and agreements containing confidentiality obligations), without the prior written consent of such other party, unless compelled to do so by a Court of competent jurisdiction.

7.   **DESIGNATING PROTECTED MATERIAL**

(a)   <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:  <u>"CONFIDENTIAL,"</u> "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)     Written Discovery and Documents and Tangible Things.     Written

discovery, documents (which include "electronically stored information," as that phrase is used

in Federal Rule of Procedure 34), and tangible things that meet the requirements for the

confidentiality designations listed in Paragraph 7(a) may be so designated by placing the

appropriate designation on every page of the written material prior to production. For digital

files being produced, the Producing Party may mark each viewable page or image with the

appropriate designation, and mark the medium, container, and/or communication in which the

digital files were contained. In the event that original documents are produced for inspection, the

original documents shall be presumed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)     Depositions and Testimony.     Parties or testifying persons or entities may

designate depositions and other testimony with the appropriate designation by indicating on the

record at the time the testimony is given or by sending written notice of how portions of the

transcript of the testimony are designated within twenty one (21) days of receipt of the transcript

of the testimony. If no indication on the record is made, all information disclosed during a

deposition shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" until

the time within which it may be appropriately designated as provided for herein has passed. Any

Party that wishes to disclose the transcript that has been deemed "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY" as a result of no designation having been made on the record at

the time the testimony was given, or information contained therein, may provide written notice

of its intent to treat the transcript as non-confidential, after which time, any Party that wants to

maintain any portion of the transcript as confidential must designate the confidential portions

within fourteen (14) days, or else the transcript may be treated as non-confidential.     Any

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

## 8. DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"

(a) A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects information that qualifies for protection under Federal Rule of Civil Procedure 26(c).

(b) Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i) The Receiving Party's Outside Counsel;

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) such expert or consultant is not a current officer, director, or employee of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party;

(iv)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

(vi)     Document processing and hosting vendors, and graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)     Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(viii)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(i)(ix)     Any other person with the prior written consent of the Producing Party or by Order of this Court.

---

02198.51855/4543875.1                          - 10 -

## 8.9.   DISCOVERY  MATERIAL  DESIGNATED  AS  "CONFIDENTIAL  – ATTORNEYS' EYES ONLY"

(a)    A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects sensitive business information that is  ~~confidential and/or, proprietary,~~ trade secret, and/or commercially sensitive, where substantial harm from disclosure cannot otherwise be avoided.  The Parties agree that at least the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:   trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, cost information, licensing of the Producing Party's intellectual property, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)    Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)    The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making[1], as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have access to Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY";

---

[1]    For the absence of doubt, for the purposes of this Protective Order, "competitive decision-making" shall not include duties traditionally performed by outside counsel with respect to advising the Parties regarding this or other litigation.

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

(ii)   Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)   Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party with respect to the subject matter of the patents-in-suit; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 11 12 below;

(iv)   Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)   The Court, jury, and court personnel;

(vi)   Document processing and hosting vendors, and graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

02198.51855/4543875.1

- 12 -

(vii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)    Any other person with the prior written consent of the Producing Party or by order of this Court.

9.10.    **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a)    To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)    Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c)    Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 10 11 below, solely to:

(i)    The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have access to Discovery Material designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE";

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party with respect to the subject matter of the patents-in-suit; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party with respect to the subject matter of the patents-in-suit; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph ~~11~~ 12 below;

(iv)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)     The Court, jury, and court personnel;

(vi)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)   Any other person with the prior written consent of the Producing Party or by order of this Court.

02198.51855/4543875.1

- 14 -

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

1

~~10.~~11.  **DISCLOSURE AND REVIEW OF SOURCE CODE**

2

3

       (a)     The following provisions apply to the production of Source Code that is

4

designated "[PRODUCING PARTY'S]HIGHLY CONFIDENTIAL— OUTSIDE

5

ATTORNEYS' EYES ONLY — SOURCE CODE," unless otherwise agreed by the Producing

6

Party:

7

       (b)     All Source Code shall be made available by the Producing Party to the

8

Receiving Party in a secure room, on at least two secured, stand-alone computers (running a

9

reasonably current operating system) per software platform produced, without Internet access or

10

network access to other computers, as necessary and appropriate to prevent and protect against

11

any unauthorized copying, transmission, removal, or other transfer of any Source Code outside

12

or away from the computer on which the Source Code is provided for inspection (hereinafter

13

"Confidential Source Code Computer"). If it should be necessary, the Confidential Source Code

14

Computer may be configured by the Producing Party to run other mutually agreed upon

15

operating systems. Except as otherwise authorized by the Producing Party, no more than a total

16

of 25 individuals identified by the Receiving Party shall have access to the secure room in which

17

the Producing Party produces its Source Code.

18

19

       (c)     The Producing Party shall install tools that are sufficient for viewing and

20

searching the code produced, on the platform produced, if such tools exist and are presently used

21

in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel

22

and/or experts may request that commercially available software tools for viewing and searching

23

Source Code be installed on the secured computer, provided, however, that (a) the Receiving

24

Party possesses an appropriate license to such software tools; (b) the Producing Party approves

25

such software tools; and (c) such other software tools are reasonably necessary for the Receiving

26

27

28

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Confidential Source Code Computer. Specific tools may include but are not limited to:  Visual Slick Edit, Source-Navigator, PowerGrep, and ExamDiff Pro, or other similar programs.  The Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's Source Code.

(d)     The Producing Party shall make the Source Code available electronically and in text searchable form in a secure room at the offices of the Producing Party's outside counsel as defined in paragraph 2(b) or any other location mutually agreed by the parties.

(e)     In order to verify that its Source Code has not later been altered, the Producing Party may benchmark the materials before and after they are provided but shall not install any keystroke or other monitoring software on the Confidential Source Code Computer.

(f)     The Confidential Source Code Computer shall be made available from 9:00 a.m. to 7:00 p.m. local time, Monday through Friday (excluding holidays), and other days and/or times, including weekends, upon reasonable request at least until the close of expert discovery in this action.  Access on weekends or after hours shall be permitted only on three days' advance written notice.

(g)     Prior to the first inspection of any requested piece of Source Code, the requesting party shall provide fourteen (14) days notice of the Source Code that it wishes to inspect. The requesting party shall provide two (2) days notice prior to any additional inspections of the same Source Code, although the parties will be reasonable in accommodating

02198.51855/4543875.1

- 16 -

requests of less than two (2) days. The Receiving Party shall identify any individual who will be given access to the Source Code at least ten (10) days prior to the first time any such individual is given access to the Source Code, and, during that 10-day period, the Producing Party may object to providing access to any persons so identified. The Receiving Party shall provide two (2) days notice any time each such individual is given access to the Source Code after the first time, although the parties will be reasonable in accommodating notice of less than two (2) days. If an objection to an individual is made by the Producing Party, it will be the burden of the Producing Party to prove that the individual should not be authorized to inspect the Producing Party's Source Code.

(h)     Proper identification of all authorized persons shall be provided prior to any access to the secure room or to the Confidential Source Code Computer. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Confidential Source Code Computer may be denied, at the discretion of the Producing Party, to any individual who fails to provide proper identification.

(i)     The Confidential Source Code Computer shall be equipped with a printer with commercially reasonable printing speeds to print copies of the Source Code on watermarked pre-Bates numbered paper, which shall be provided by the Producing Party. The Receiving Party may print limited portions of the Source Code only when reasonably necessary to facilitate the Receiving Party's preparation of court filings, expert reports, and trial exhibits, and shall print only such portions as are relevant to the claims and defenses in the case and are reasonably necessary for such purpose. The Receiving Party shall not print Source Code in order

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

to review blocks of Source Code elsewhere in the first instance, *i.e.*, as an alternative to

reviewing that Source Code electronically on the Confidential Source Code Computer, as the

parties acknowledge and agree that the purpose of the protections herein would be frustrated by

printing portions of code for review and analysis elsewhere. If the Producing Party objects that

the printed portions are excessive and/or not done for a permitted purpose, the Producing Party

shall make such objection known to the Receiving Party within five (5) days. Printed portions

which exceed 50 continuous pages or 10% or more of a specific software release shall be

presumed excessive and not done for a permitted purpose. If, after meeting and conferring, the

Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall

be entitled to seek the Court's resolution of whether the printed Source Code in question is

narrowly tailored and was printed for a permitted purpose. The burden shall be on the Receiving

Party to demonstrate that such printed portions are no more than is reasonably necessary for a

permitted purpose and not merely printed for the purposes of review and analysis elsewhere.

Except as otherwise authorized by the Producing Party, no more than a total of 40 individuals

identified by the Receiving Party shall have access to the printed portions of Source Code

(except insofar as such code appears in any filing with the Court or expert report in this case).

   (j)  The printed Source Code shall be labeled with "[PRODUCING

PARTY'S NAME] HIGHLY CONFIDENTIAL— OUTSIDE ATTORNEYS' EYES ONLY —

SOURCE CODE." Outside counsel for the Producing Party will keep the originals of these

printed documents, and copies shall be made for outside counsel for the Receiving Party on

watermarked paper within 48 hours. It is the responsibility of the Producing Party to ensure

delivery of the printed documents to outside counsel for the Receiving Party within 48 hours.

The Receiving Party's outside counsel may make no more than ten (10) additional paper copies

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

of any portions of the Source Code received from a Producing Party, not including copies attached to court filings or used at depositions.

(k)     In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's Source Code, printed copies of the Source Code maintained by the Receiving Party must be kept in a locked storage container when not in use. No electronic copies of the Source Code shall be provided by the Producing Party beyond the Confidential Source Code Computer.

(l)     Except as provided herein, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including, by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. If a party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such filing will not be made absent agreement from the supplier that the confidentiality protections will be adequate. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or to provide written permission to the Receiving Party to produce an electronic or any other copy of Source Code for purposes of a court filing, the Receiving Party's communication and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

Order, and all such individuals must be identified, in accordance with paragraph 11θ(q), on the Confidential Source Code Access Log as reviewers and/or recipients of paper copies. In the case where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the electronic copies shall be included on the log required by paragraph 11θ(q); and any other information required by paragraph 11(q) shall be included on the log. Additionally, any such electronic copies must be labeled "[PRODUCING PARTY'S NAME] HIGHLY CONFIDENTIAL — OUTSIDE ATTORNEYS' EYES ONLY — SOURCE CODE" as provided for in this Order.

(m)     For depositions, the Receiving Party shall not bring copies of any printed Source Code. Rather, at least five (5) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall be returned to the Producing Party and securely destroyed in a timely manner following the deposition.

(n)     Other than the Confidential Source Code Computer and printer provided by the Producing Party, no electronic devices, including but not limited to laptops, floppy drives, zip drives or other hardware, shall be permitted in the secure room. Nor shall any cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, telephone jacks, or other devices be permitted inside the secure room. No non-electronic devices capable of similar functionality shall be permitted in the secure room. The Receiving Party shall

be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Confidential Source Code Computer itself or any other computer. No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

(o)     Other than as provided in paragraph 110(n), the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Confidential Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind. The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of the Producing Party's outside counsel.

(p)     Unless otherwise agreed in advance by the parties in writing, following each day on which inspection of Source Code is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the secure room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(q)    The Receiving Party shall maintain a Confidential Source Code Access Log identifying each hard copy (or electronic copy as permitted by paragraph 11(l)) of Source Code that it has in its possession and, for each and every time the hard copy (or electronic copy as permitted by paragraph 10 11(l)) of the Source Code is viewed, the following additional information: (i) the name of each person who viewed the Source Code; and (ii) whether any portion of the Source Code was copied and, if so, what portion was copied.  The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party. Within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in the above-captioned action, the Receiving Party must serve upon the Producing Party the Confidential Source Code Access Log. Additionally, within thirty (30) days after the issuance of a final, non-appealable decision resolving all issues in the action, all persons to whom the paper copies of the Source Code were provided must certify in writing that all copies of the Source Code were returned to Counsel of Record for the Producing Party and that they will make no use of the Source Code or of any knowledge gained from the Source Code in any future endeavor.

(r)    Nothing herein shall be deemed a waiver of a party's right to object to the production of Source Code.  Absent a subsequent and specific court or agency order, nothing herein shall obligate a party to breach any non-party license agreement relating to such Source Code.

(s)    The parties further acknowledge that some or all of the Source Code may be owned by non-parties and not in a party's possession, custody, or control.  Nothing herein shall be deemed a waiver of any non-party's right to object to the production of Source Code or object to the manner of any such production.

1

2        (t)       Any consultant or expert retained on behalf of a Receiving Party who is

3    to be given access to a Producing Party's Source Code — whether in electronic form or

4    otherwise — must agree in writing not to use the accessed code to write source code directly

5    intended for commercial purposes relating to the technology at issue in this action for a period of

6    six (6) months after the issuance of a final, non-appealable decision resolving all issues in the

7    action.  This shall not preclude such consultants and experts from any academic work or

8    consulting in future litigation, so long as such consulting does not involve writing source code

9    directly intended for commercial purposes relating to the technology at issue in this action.

10        ~~11.~~12.  **NOTICE OF DISCLOSURE**

11        (a)       Prior to disclosing any Protected Material to any person described in

12   Paragraphs ~~8(b)(iii), or~~ 9(be)(iii) or 10(c)(iii) (referenced below as "Person"), the Party seeking

13   to disclose such information shall provide the Producing Party with written notice that includes:

14   (i) the name of the Person; (ii) the present employer and title of the Person; (iii) an identification

15   of all of the Person's past or current employment or consulting relationships, including direct

16   relationships and relationships through entities owned or controlled by the Person, within the last

17   five (5) years; (iv) an up-to-date curriculum vitae of the Person; and (v) a list of the cases in

18   which the Person has testified at deposition or trial within the last five (5) years.  Said written

19   notice shall include an identification of any individual or entity with or for whom the person is

20   employed or to whom the person provides consulting services relating to the design,

21   development, operation, or patenting of mobile phones and tablet computers, or relating to the

22   acquisition of intellectual property assets relating to mobile phones and tablet computers.  The

23   Party seeking to disclose Protected Material shall provide such other information regarding the

24   Person's professional activities reasonably requested by the Producing Party for it to evaluate

25

26

27

28

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

1  whether good cause exists to object to the disclosure of Protected Material to the outside expert

2  or consultant.  During the pendency of this action, including all appeals, the Party seeking to

3  disclose Protected Material shall immediately provide written notice of any change with respect

4  to the Person's involvement in the design, development, operation or patenting of mobile phones

5

6  and tablet computers, or the acquisition of intellectual property assets relating to mobile phones

7  and tablet computers.

8          (b)     Within seven (7) days of receipt of the disclosure of the Person, the

9  Producing Party or Parties may object in writing to disclosure to the Person for good cause.  In

10  the absence of an objection at the end of the seven (7) day period, the Person shall be deemed

11  approved under this Protective Order.  There shall be no disclosure of Protected Material to the

12  Person prior to expiration of this seven (7) day period.  If the Producing Party objects to

13  disclosure to the Person within such seven (7) day period, the Parties shall meet and confer via

14  telephone or in person within seven (7) days following the objection and attempt in good faith to

15  resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the

16  disclosure will have seven (7) days from the date of the meet and confer to seek relief from the

17  Court.  If relief is not sought from the Court within that time, the objection shall be deemed

18  withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in

19

20  question until the Court resolves the objection.

21

22          (c)     For purposes of this section, "good cause" shall include an objectively

23  reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery

24  Materials in a way or ways that are inconsistent with the provisions contained in this Order.

25

26

27

28

02198.51855/4543875.1                          - 24 -

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the non-objecting Party from later objecting to continued access to Protected Material by that Person based on new facts or circumstances for good cause shown. In this event, a Party must make a written objection to the other Party concerning the continued access of Protected Material by that Person, and the Parties must meet and confer in good faith concerning such objection. To the extent that the objection is unable to be resolved, the later-objecting Party must present its objection to the Court for resolution within no later than five (5) days of making such objection. Notwithstanding such objection, the designated Person may continue to have access to Protected Material until judicial resolution of the objection.

## ~~12.~~13.   CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any

02198.51855/4543875.1

- 25 -

other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)    Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

### ~~13.~~14.   SUBPOENAS OR COURT ORDERS

(a)    If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

14.15.  **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file in the public record any Protected Material.

(b)     Any Receiving Party is authorized under Local Rule 79-5 to request the filing under seal with the Court of any brief, document or materials that are designated as Protected Material under this Order.  Nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

15.16.  **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a notice and request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a notice and request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return within five (5) days of such notice and request such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Within five (5) days of the Producing Party's notice and request for the return and/or destruction of privileged Discovery Material, the Producing Party shall provide a

02198.51855/4543875.1                                    - 27 -

privilege log with entries for the inadvertently produced document(s). The Producing Party shall maintain the referenced document(s) until the Parties resolve any dispute concerning the privileged nature of such documents or the Court rules on any motion to compel production of such documents. If a dispute arises concerning the privileged nature of the document(s) demanded or returned, the Parties shall meet and confer in good faith in an effort to resolve the dispute. If the Parties are unable to resolve the dispute, the Receiving Party may file a motion to compel the production of such document(s). In the event of such a motion to compel, the Producing Party shall have the burden to demonstrate the claimed privilege, work product immunity or other immunity. However, in no case will the return of any demanded document be delayed or refused by reason of a party's objection to the demand or by the filing of a motion to compel, nor may a party assert the fact of the inadvertent production as a ground for any such motion. The Parties further agree that the Receiving Party will not use or refer to any information contained within the document(s) at issue, including in deposition or at trial or in any Court filing, unless and until such a motion to compel production of that document is granted by a Court, except as such information may appear in any applicable privilege log.

### ~~16.~~17.  INADVERTENT FAILURE TO DESIGNATE PROPERLY

(a)      The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving

the Protected Material with the correct confidentiality designation, the Receiving Parties shall destroy all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives the notice described in Paragraph 16 17(a), unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17 6(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Protected     Material     produced     without     the     designation     of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" may be so designated subsequent to production when the Producing Party failed to make such designation at the time of production through inadvertence or error.  If Discovery Material is designated subsequent to production, the Receiving Party promptly shall collect any copies that have been provided to individuals so that they can be re-labeled with the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" designation.  Notwithstanding the above, such subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY –

02198.51855/4543875.1                              - 29 -

SOURCE CODE" materials only while the materials were not marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

## ~~17.~~ 18. **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

## ~~18.~~ 19. **FINAL DISPOSITION**

(a)     Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed.  Notwithstanding the provisions for return of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return or destroy any pleadings, correspondence, and consultant work product that contain Source Code.

## ~~19.~~20.  DISCOVERY FROM EXPERTS OR CONSULTANTS

(a)     The Parties will not seek drafts of expert reports, declarations, affidavits, or notes taken by experts retained to testify in this litigation, whether those reports, declarations, affidavits, or notes relate to this litigation, to any prior litigation, or to any currently pending investigation, litigation or proceeding involving any -of the Parties. The Parties will not seek documents relating to communications between such experts and counsel, including email communications, whether generated in connection with this litigation, a prior litigation, or any currently pending investigation, litigation or proceeding involving any of the Parties, except for documents, information and things included in or attached to such communications that are directly relied upon by the expert in his or her expert report, declaration, affidavit, or testimony.

(b)     Except where a draft was produced as the only available copy, the Parties will not inquire at deposition or trial as to the contents of drafts of expert reports, declarations or affidavits, nor notes pertaining thereto, whether drafted in connection with this litigation, a prior litigation, or any currently pending investigation, litigation or proceeding involving any of the Parties, and the Parties will not inquire at deposition or at trial as to the expert's communications, written or oral, with counsel, whether generated in connection with this litigation, a prior litigation, or any currently pending investigation, litigation or proceeding involving any of the

Parties, except to the extent that the expert explicitly references or cites information from counsel in his or her expert report, declaration, affidavit, or testimony.

(c)     Furthermore, nothing in Paragraph ~~19~~20(a)-(b) is intended to restrict the Parties' ability to inquire into the basis of any of the opinions expressed by any expert in his or her report, declaration, or affidavit, including the manner by which such opinions were reached, and information considered in reaching such opinions.

(d)     Materials, communications, and other information exempt from discovery under the foregoing Paragraph ~~19~~20(a)-(b) shall be treated as attorney-work product for the purposes of this litigation and Order.

## ~~20.~~21.   ELECTRONIC DISCOVERY

(a)     The Parties agree that no voicemail, instant messages, text messages, or materials that may be archived and/or retained in tape, floppy disc, optical disc or similar media for backup or disaster recovery shall be searched for or produced unless good cause for the production can be shown, and further subject to the Producing Party's claim of undue burden or cost. The Parties shall meet and confer as to good cause on this issue.

(b)     Materials retained in tape, floppy disk, optical disk or similar formats primarily for back-up or disaster recovery purposes should be considered not reasonably accessible under Rule 26(b)(2) of the Federal Rules of Civil Procedure and, accordingly, should not be subject to production unless specific facts demonstrate a particular need for such evidence that justifies the burden of retrieval. Archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are created for disaster recovery purposes and not used as reference materials in the ordinary course of a party's business operations need not be searched or produced absent good cause, and further subject to the Producing Party's claim of

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

undue burden or cost. Neither party need deviate from the practices it normally exercises with regard to preservation of such "tape, floppy disk, optical disk or similar formats primarily for back-up or disaster recovery purposes" that it does not otherwise exercise when not in anticipation of litigation (*e.g.*, recycling of backup tapes is permitted).

## 21.22. CROSS-REFERENCE AND USE OF DISCOVERY MATERIALS

Documents that have been or are produced (with appropriate Bates numbers) in the below-referenced pending United States proceedings involving Apple and Samsung are deemed produced in the above-captioned action, and neither party shall be deemed to have violated a protective order in the below listed matters by using such documents in the above-captioned action:   *In the Matter of Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers,* USITC Inv. No. 337-TA-794, and *In the Matter of Certain Electronic Digital Media Devices and Components Thereof,* USITC Inv. No. 337-TA-796. Any document produced by a Party in the one of the aforementioned proceedings shall be used and treated with the same level of confidentiality for purposes of this action (e.g., a document designated by a Party as "Confidential Business Information" shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in this action) as an initial matter, but may be re-designated pursuant to Paragraph 13 of this Order. This paragraph shall not extend to cross-use of confidential materials produced by third parties in such matters. This cross-use provision also does not apply to other forms of discovery, including, without limitation, deposition transcripts and videos, deposition exhibits, expert reports and responses to interrogatories or requests for admission. Nothing in this paragraph, however, prohibits a party from seeking such other forms of discovery through service of formal discovery requests in this action. Any costs incurred in

AGREED UPON PROTECTIVE ORDER
REGARDING DISCLOSURE AND
USE OF DISCOVERY MATERIALS

the above-referenced ITC matters shall be excluded from a computation of taxable costs under Fed. R. Civ. P. 54 and N.D. Cal. Civ. L.R. 54.

22.23. **MISCELLANEOUS**

(a)  Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)  Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter.  The Court shall retain jurisdiction after Final Disposition of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)  Successors.  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)  Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)     Burdens of Proof.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     Modification by Court.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the Northern District of California is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Northern District of California.

(g)     Discovery Rules Remain Unchanged.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of California, or the Court's own orders.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of California, or the Court's own orders.

(h)     Supersession of Any Protective Orders.  Except as otherwise set forth in this paragraph, this Protective Order supersedes any protective orders referenced by the Parties as applying to material disclosed before the entry of this Protective Order.  Any discovery material disclosed by any Party before the entry of this Protective Order shall retain whatever confidentiality designation it originally bore.  Such Protected Material that was designated as

02198.51855/4543875.1

- 35 -

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" pursuant to this Court's Patent L.R. 2-2 Model Interim Protective Order, or by the Stipulated Modification to Patent L.R. 2-2 Model Interim Protective Order for Purposes of Expedited Discovery (D.N. 76), shall be treated as if they were designated "CONFIDENTIAL - ATTORNEYS' EYES ONLY," and such Protected Material previously designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to either or both of those prior orders shall be treated as if they were designated "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE." In addition, any expert disclosed pursuant to Paragraph 7.4(a)(2) of the Interim Protective Order shall be deemed to have been disclosed pursuant to Paragraph 11 of this Protective Order.

02198.51855/4543875.1

1

2 **STIPULATED AND AGREED:**

3

Dated:  December 22, 2011                                Respectfully submitted,

4

5          _/s/ Mark D. Selwyn_                                    _/s/ Diane C. Hutnyan_
William F. Lee                                          Charles K. Verhoeven
6 WILMER CUTLER PICKERING                      QUINN EMANUEL URQUHART
   HALE AND DORR LLP                                 & SULLIVAN LLP
7 60 State Street                                       50 California Street, 22nd Floor
Boston, Massachusetts  02109                 San Francisco, California  94111
8 Telephone:  (617) 526-6000                    Telephone:  (415) 875-6600
Facsimile:  (617) 526-5000
9
                                                       Victoria Maroulis
10 Mark D. Selwyn                               QUINN EMANUEL URQUHART
WILMER CUTLER PICKERING                     & SULLIVAN LLP
   HALE AND DORR LLP                           555 Twin Dolphin Drive, 5th Floor
11 950 Page Mill Road                           Redwood Shores, California  94065
Palo Alto, California  94304                   Telephone:  (650) 801-5066
12 Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100
13
Diane C. Hutnyan
14 Harold J. McElhinny                          QUINN EMANUEL URQUHART
Michael A. Jacobs                               & SULLIVAN LLP
15 Richard S.J. Hung                            865 S. Figueroa St., 10th Floor
MORRISON & FOERSTER LLP                      Los Angeles, California  90017
16 425 Market Street                            Telephone:  (213) 443-3000
San Francisco, California  94105
17 Telephone:  (415) 268-7000                  _Counsel for Samsung Electronics Co., Ltd.,_
Facsimile:  (415) 268-7522                      _Samsung Electronics America, Inc., and_
18                                              _Samsung Telecommunications America, LLC_
   _Counsel for Plaintiff and Counterclaim-_
   _Defendant Apple Inc._
19

20

21

22 **IT IS SO ORDERED.**

23

24 Date:  ___1/30/2012_____           _Paul S. Grewal_
                                          _____
25                                        UNITED STATES ~~DISTRICT~~ JUDGE
                                                  MAGISTRATE
26

27

28
   02198.51855/4543875.1                    - 37 -

                                                    AGREED UPON PROTECTIVE ORDER
                                                      REGARDING DISCLOSURE AND
                                                     USE OF DISCOVERY MATERIALS

1

## EXHIBIT A

2

3      I, _____, acknowledge and declare that I have received a

4    copy of the Protective Order ("Order") in *Apple Inc. v. Samsung Electronics Co., Ltd.,*

5
     *Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC,* United
6
7    States District Court, Northern District of California, San Jose Division, Civil Action No. 11-

8    cv-01846-LHK.  Having read and understood the terms of the Order, I agree to be bound by

9    the terms of the Order and consent to the jurisdiction of said Court for the purpose of any

10   proceeding to enforce the terms of the Order.

11
             Name of individual: _____
12
             Present occupation/job description: _____
13
14           _____

             _____
15
             Name of Company or Firm: _____
16
             Address:_____
17

18           Dated: _____

19
                                              _____
20                                                          [Signature]

21

22

23

24

25

26

27

28
02198.51855/4543875.1                    - 38 -